UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DEREK BARNETT,

        Petitioner,

V.

JOHN W. BURGE,

        Respondent.

**REPORT AND RECOMMENDATION**

02-CV-1528

## I. INTRODUCTION

Petitioner Derek Barnett, acting *pro se*, commenced this action seeking habeas corpus relief under 28 U.S.C. § 2254. Petitioner is an inmate at the Otisville Correctional Facility. In 1999, he was convicted in a New York State court of Third Degree Criminal Possession of a Controlled Substance and Fourth Degree Conspiracy and was sentenced to a term of imprisonment. Petitioner contends that his conviction was imposed in violation of his constitutional rights and should be vacated.

This matter was referred to the undersigned by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is presently before this Court for a report and recommendation. (Docket No. 29).

## II. BACKGROUND

**A.**    **Facts**

The following factual summary is derived from the state court records provided in this case. In October of 1998, the landlord of a building located at 47 Elm Street in Glens

Falls, New York, suspected that one of his tenants, Edward Tutt ("Tutt") was selling illicit drugs from his apartment. (S.R. at 173).[1] Based upon information provided by the landlord, Detective Sergeant Lloyd Swartz ("Swartz") of the Glens Falls Police Department and Lieutenant Kevin Conine ("Conine") set up surveillance on apartment 6, located at 47 Elm Street. (S.R. at 173-74, 237). The officers observed numerous persons known to be local drug users coming and going from the apartment over the course of one evening. (Id.). Thereafter, the officers secured a search warrant for the apartment and executed it the next day. (S.R. at 178). The police then interviewed Tutt, the tenant in apartment 6, and he revealed that Petitioner and others were using his apartment to sell crack cocaine. (Id.). Tutt asked the police for help to end visits of these drug dealers and gave the police a sworn statement. (S.R. at 178-81). Tutt also executed a written consent to search his apartment and promised to call the police when Petitioner returned to his apartment. (S.R. at 181-82).

On October 23, 1998, the police, while surveilling apartment 6, learned that Petitioner and others had returned to Tutt's apartment. (S.R. at 182). Using Tutt's written consent to search, they entered the apartment, where they found a bag of crack cocaine along with Petitioner, his two co-defendants, Andre Harris ("Harris") Lacount Simmons ("Simmons"), and two females. (S.R. at 182-87). Thereafter, Petitioner, Harris, Simmons, and the two females present in the apartment were arrested and charged with criminal possession of a controlled substance in the third degree. (S.R. at 189).

---

[1] References preceded by "S.R." are to the documents comprising the State Court Records provided by Respondent in this case. They are sequentially numbered pages 1-429 and include Petitioner's indictment, excerpts from transcripts of Petitioner's Sandoval hearing, Mapp hearing, trial, and various other records. References to page numbers will be to the pages of the "State Court Records" as a whole rather than to the page numbers within the various individual documents.

On November 23, 1998, a Warren County Grand Jury returned Indictment Number 4462, which charged Petitioner, Harris, and Simmons with two counts of Criminal Possession of a Controlled Substance in the Third Degree, in violation of New York Penal Law ("NEPAL") §220.16(1);[2] and Conspiracy in the Fourth Degree, in violation of NEPAL § 105.10(1). (S.R. at 1-3).

**B.     State Trial Court Proceedings**

The Honorable Joseph Teresa, Warren County Court Judge, presided over Petitioner's trial proceedings.  The trial began on February 22, 1999. Petitioner was represented at trial by Gregory V. Canals, Esq.[3]  On February 24, 1999, the jury found Petitioner guilty of the two counts of Criminal Possession of a Controlled Substance in the Third Degree and of Conspiracy in the Fourth Degree. (S.R. at 4-5).

On May 5, 1999, Petitioner was sentenced as a second violent felony offender to concurrent indeterminate sentences of 12 ½ to 25 years for each of the Criminal Possession convictions and two to four years for the Conspiracy conviction.  (S.R. at 4-5). Therefore, Petitioner's total aggregate sentence was 12 ½ to 25 years.

**C.     State Appellate Proceedings**

Petitioner, represented by Marshall Nada, Esq., appealed his conviction to the Appellate Division, Third Department, of the New York State Supreme Court.  Petitioner

---

[2] Unless otherwise indicated, all references to the N.Y.P.L. are to McKinney 1998.

[3] Michael S. O'Dell, Esq. was originally assigned to represent Petitioner.  According to Petitioner's Affidavit in Support of his CPL§ 440 motion, O'Dell appeared with Petitioner at his arraignment and grand jury proceedings.  Thereafter, Petitioner retained Gregory V. Canale to represent him.  (S.R. at 21).

asserted that the hearsay testimony of various witnesses was admitted improperly and that the trial court improperly limited defense counsel's cross examination of Tutt. In a decision issued on December 21, 2000, the Appellate Division affirmed Petitioner's conviction and sentence. People v. Barnett, 717 N.Y.S.2d 736 (3rd Depot 2000). Petitioner's application for leave to appeal to the Court of Appeals was denied on May 10, 2001. People v. Barnett, 96 N.Y.2d 825 (2001).

On August 28, 2001, Petitioner made a motion pursuant to New York Criminal Procedure Law (CPL) § 440.10 to vacate his conviction.[4] (S.R. at 40 & Docket No. 7). Petitioner claimed ineffective assistance of counsel with respect to both of his trial attorneys, Michael O'Dell, Esq. and Gregory Canals, Esq. (S.R. at 21). Specifically, Petitioner, an African American, alleged that his trial attorneys improperly failed to object to the exclusion of African American jurists from both the grand jury and petit jury. (Id.) Petitioner further alleged that his trial counsels' failure to move for a change of venue to a more racially diverse county denied him his right to a fair trial. (Id.). Petitioner requested a hearing to determine what communication his two trial counsel had with each other and what tactical reason they had for failing to object to the exclusion of African American jurists from the grand and petit juries. (S.R. at 25).

On December 11, 2001, the Honorable John Austin, Warren County Court Judge, denied Petitioner's motion, holding that Petitioner failed to show that there was any systematic exclusion of African American jurors. (S.R. at 40-41). On February 13, 2002, the Appellate Division, Third Department denied Petitioner permission to appeal. (Docket

---

[4]Petitioner was assigned Michael R. Stern, Esq. as counsel to represent him in his CPL§ 440 motion. (S.R. at 34).

No. 7, "Exhibit 4").

### D.  Federal Habeas Corpus Proceedings

Petitioner, proceeding *pro se*, commenced this action on December 9, 2002, by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Docket No. 1). Petitioner asserted two grounds for habeas relief: (1) that he received ineffective assistance of trial counsel; and (2) that he received ineffective assistance of appellate counsel.

On January 27, 2003, Petitioner moved to stay his habeas corpus proceedings so that he could exhaust his claim of ineffective assistance of appellate counsel.  (Docket No. 7).  On February 6, 2003, the Honorable Lawrence E. Kahn, United States District Judge, granted Petitioner's motion to stay the habeas corpus proceedings until he exhausted his state court remedies.  (Docket No. 8).

Thereafter, Petitioner filed an application with the Appellate Division, Third Department, for *coram nobs* relief, arguing that his appellate counsel, Marshall Nada, Esq., was ineffective because he failed to raise the issue of African American juror exclusion on appeal.  (S.R. at 47-62).  The *coram nobs* motion was denied by the Appellate Division on May 16, 2003.  (S.R. at 84).  Thereafter, Petitioner made a motion for reargument, which was denied on July 1, 2003.  (S.R. at 77, 85).

For the reasons that follow, the Court recommends that the Petition be DENIED.

## III. DISCUSSION

### A. Federal Habeas Corpus Standard

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits." 28 U.S.C. § 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001). The Second Circuit has stated that an "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." Sellan, 261 F.3d at 313 (quotation omitted). The Second Circuit has also held that even a one-word denial of a petitioner's claim is sufficient to constitute an "adjudication on the merits" for purposes of AEDPA. Id. at 312-313.

Specifically, AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

While both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, Whitaker v. Meachum, 123 F.3d 714,

715 n. 1 (2d Cir. 1997), AEDPA also requires a Petitioner to rebut that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002). A presumption of correctness applies to findings by both state trial and appellate courts. Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001); Whitaker, 123 F.3d at 715 n.1.

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law. A state court decision is "contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts." Id.

A state court decision involves "an unreasonable application of" Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." Id.

Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

7

**B.    Petitioner's Claims**

Petitioner asserts the following two claims in support of this Petition: (1) that he received ineffective assistance of trial counsel because his trial attorneys failed to object to the exclusion of African Americans from the Grand Jury and Petit juries;[5] and (2) that he received ineffective assistance of appellate counsel because appellate counsel failed to raise the issue of juror exclusion on appeal.

**1.    Ineffective Assistance of Trial Counsel**

In order to prevail on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a habeas petitioner must satisfy a two-part test. First, a petitioner must demonstrate that counsel's performance was so deficient that counsel was not functioning as "counsel" within the meaning of the Sixth Amendment to the Constitution. Id. at 688, 104 S.Ct. 2052. In other words, a petitioner must show that his attorney's performance "fell below an objective standard of reasonableness." Id. Second, a petitioner must show that counsel's deficient performance prejudiced him. Id. at 694, 104 S.Ct. 2052.

The issue of prejudice need not be addressed, however, if a petitioner is unable to demonstrate first that his counsel's performance was inadequate. "[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the

---

[5]As noted above, in his CPL § 440 motion to vacate his conviction, Petitioner also argued that his trial counsel improperly failed to move for a transfer of venue. However, that claim is not raised in the instant Petition and is therefore not before this Court.

inquiry if the defendant makes an insufficient showing on one." Id. at 697, 104 S.Ct. 2052.

### a. Grand Jury Proceedings

Petitioner claims that his first trial attorney, Michael O'Dell, improperly failed to preserve Petitioner's right to challenge the exclusion of "any distinct group" from grand jury service. Specifically, Petitioner argues that his trial counsel should have challenged the racial makeup of the grand jury to determine whether it represented a "fair cross section of the community."

Criminal defendants are guaranteed by the Sixth Amendment the right to "a jury selected from a fair cross section of the community." United States v. Rioux, 97 F.3d 648 (2d Cir. 1996); see Duren v. Missouri, 439 U.S. 357, 364 (1979); see also Peters v. Kiff, 407 U.S. 493, 502-03 (1972). Neither a grand nor petit jury may be selected in a manner that systematically excludes any discernible class. Duren, 407 U.S. at 497-98. A prima facie violation of the fair cross section requirement is established by demonstrating:

> (1) that the group alleged to be excluded is a "distinctive group
> in the community; (2) that the representation of this group in
> venires from which juries are selected is not fair and reasonable in
> relation to the number of such persons in the community; and (3)
> that this underrepresentation is due to systematic exclusion of the
> group in the jury selection process.

Rioux, 97 F.3d at 654 (citing Duren, 439 U.S. at 364).

At the outset, there is not a shred of evidence that either the grand jury or petit jury venire was tainted. Petitioner satisfies only one prong of the Duren test: "Blacks . . . are unquestionably 'distinctive' groups for the purpose of a fair cross section analysis." Rioux, 97 F.3d at 654 (citation omitted). However, Petitioner fails to establish underrepresentation or systematic exclusion. As discussed more fully below, Petitioner has not provided any

data or other evidence, statistical or otherwise, to prove that African Americans were underrepresented in or systematically excluded from the Warren County venires, as is his burden. See Rioux, 97 F.3d at 655-58. Therefore his claim must fail.

Additionally, it is well settled that alleged errors in grand jury proceedings are not cognizable on federal habeas corpus review. As this Court has previously explained, "[t]he trial jury's guilty verdict necessarily renders any irregularities before the grand jury harmless as it establishes not only that there existed probable cause to indict the defendant, but also that the defendant was 'in fact guilty as charged beyond a reasonable doubt." Burden v. Filion, 421 F. Supp.2d 581, 589 (W.D.N.Y. 2006) (quoting United States v. Mechanik, 475 U.S. 66, 68, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986)); see also Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989). Accordingly, Petitioner's claim of ineffective assistance of counsel with respect to Michael O'Dell, Esq. should be DENIED.

### b. Trial Proceedings

Petitioner also alleges that his second trial attorney, Gregory Canals, improperly failed to object when the prosecution exercised a peremptory challenge and removed the only African American juror from the trial jury. Petitioner argues that Attorney Canals should have raised a "fair cross section" challenge or a Batson[6] objection. This Court will address each of these arguments in turn.

First, as to trial counsel's failure to challenge the racial composition of the jury panel, Petitioner has not demonstrated a prima facie showing that he had a viable "fair cross section" claim under the Sixth Amendment or the Equal Protection Clause.

---

[6]Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

As discussed above and as this Court has previously explained, "[t]o establish a prima facie case under the Sixth Amendment, the movant must demonstrate that the under-representation of the racial group claimed to be excluded is the result of 'systematic exclusion of the group in the jury selection process.'" Minigan v. Donnelly, 01-CV-0026A, 2007 WL 542137, at *19 (W.D.N.Y. Feb. 16, 2007) (quoting Duren, 439 U.S. at 364, 99 S.Ct. at 668-69). "Under the Equal Protection Clause, the moving party also bears the burden of showing that the selection procedure is not racially neutral, i.e., is the result of intentional discrimination by the state." Id. (citing Alston v. Manson, 791 F.2d 255, 258 (2d Cir.1986); Castaneda v. Partida, 430 U.S. 482, 494-95, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977)).

In the present case, Petitioner has failed to provide any statistical proof to indicate that the racial composition of the trial jury pool was the result of systematic exclusion of African Americans in the jury selection process. For example, Petitioner has submitted no statistical evidence with respect to the number of African Americans in Warren County or the number of African Americans in the venires in Warren County at the time of trial. "Since the burden is on the party challenging the jury selection process to present statistical proof of underrepresentation, [Petitioner's] challenge must fail." Minigan, 2007 WL 542137, at *19 (citing United States v. Brady, 579 F.2d 1121, 1134 (9th Cir.1978), United States v. Dioguardi, 332 F.Supp. 7, 20 (S.D.N.Y.1971)). As such, this Court finds that Petitioner has failed to demonstrate that trial counsel had a colorable basis on which to challenge the jury panel at trial.

Second, with respect to a possible Batson challenge, this Court finds that such a challenge would likely have been rejected by the trial court and that trial counsel may have

11

had a strategic reason for declining to raise such a challenge.

To establish a prima facie case under Batson v. Kentucky, the moving party must demonstrate that the circumstances give rise to an inference that the prospective juror was struck because of his or her race. 476 U.S. at 84; accord Galarza v. Keane, 252 F.3d 630, 636 (2d Cir. 2001).  Next, if the trial court finds that the party making the Batson challenge has established a prima facie case, it must require the non-moving party to proffer a race-neutral explanation for striking the potential juror. Id.  Finally, if the non-moving party proffers a race-neutral explanation, the trial court must determine whether the moving party has carried his or her burden of proving by a preponderance of the evidence that the strike was "motivated by purposeful discrimination." Id.

In the present case, Petitioner requests an evidentiary hearing in order to set forth facts in support of a potential Batson claim. See (Docket No. 27 at 6).  However, the record clearly contains sufficient facts upon which to make a determination concerning the circumstances of the solitary challenge of a black juror.  Specifically, the prosecution used a peremptory challenge to remove Denise Perkins, an African American, from the jury. (S.R. at 64, 70-71 (Jury Voir Dire Transcript)).  For purposes of this analysis, this Court assumes that Petitioner's trial counsel could have established a *prima facie* case that Perkins was struck because of her race.

The burden would then have shifted to the prosecution to offer a race-neutral reason for the challenge.  Such a reason existed.  Specifically, Perkins was acquainted with Edward Tutt, a material witness for the prosecution, through her church.  (S.R. at 65-66). Additionally, Ms. Perkins worked as a corrections officer in a drug and alcohol facility within New York State's Department of Correctional Services ("DOCS").  (S.R. at 70-71).  The

12

prosecution might have felt that Perkins would not have been fair and impartial based upon these race-neutral factors.

In this Court's opinion, in the face of these race-neutral factors, it is highly unlikely that Petitioner's trial counsel would have been able to establish by a preponderance of the evidence that the strike was racially-motivated.  Since "[t]he credibility of an attorney offering a race-neutral explanation is at the very heart of [the] analysis," Barnes v. Anderson, 202 F.3d 150, 157 (2d Cir.1999), the reviewing court "ordinarily should give [the trial court's] findings great deference." Batson v. Kentucky, 476 U.S. at 98 n. 21; accord Hernandez v. New York, 500 U.S. 352, 364, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).  Here, Perkins was the only juror who was an acquaintance of one of the prosecution's material witnesses.  Thus, this alone was a basis to distinguish Ms. Perkins from other similarly situated jurors, undermining Petitioner's claim of pretext.

Moreover, trial counsel might have had a strategic reason for electing not to challenge the removal of Perkins from the jury.  To wit, trial counsel could have reasonably believed that Perkins' relationship with Tutt and employment with DOCS would have led her to favor the prosecution.

Accordingly, as trial counsel did not have a particularly strong basis for challenging the exclusion of Perkins and, indeed, may have strategically decided not to raise such a challenge, Petitioner's claim for ineffective assistance of counsel must fail.  See United States v. Eisen, 974 F.2d 246, 265  (2d Cir.1992) (stating that the tactical decisions made by defense counsel at trial do not constitute ineffective assistance of counsel provided they are reasonably made).

### c. Lack of Prejudice

In addition, and in the alternative, even if trial counsel was ineffective, Petitioner has failed to demonstrate any prejudice resulting therefrom. To establish the "prejudice" prong of the <u>Strickland</u> test, a petitioner must show that a "reasonable probability" exists that, but for counsel's error, the outcome of the trial would have been different. <u>Id.</u> at 694, 104 S.Ct. 2052.

The evidence of Petitioner's guilt at trial was overwhelming. For example, Petitioner was found by police, in Edward Tutt's apartment with a bag of crack cocaine. (S.R. at 182-87, 312-313, 316). Testimony at trial revealed that Edward Tutt gave a description of the car driven by the people selling drugs in his apartment to the police. (S.R. at 314). A car registered to Petitioner and matching the description given was parked nearby the apartment. (<u>Id.</u>). Additionally, Edward Tutt testified that he told the police that Petitioner and his co-defendants would use his apartment to sell crack from on multiple occasions. (S.R. at 325-327). Therefore, Petitioner is unable to demonstrate that a reasonable probability exists that, but for counsels' alleged error, the outcome of his trial would have been different. <u>Strickland</u>, 466 U.S. at 694.

### 2. Ineffective Assistance of Appellate Counsel

With respect to his claim of ineffective assistance of appellate counsel, Petitioner claims that Marshall Nada, Esq. failed to raise the issue of juror exclusion on appeal. With respect to claims of ineffective assistance of appellate counsel, the Supreme Court has held that appellate counsel "need not advance *every* argument, regardless of merit, urged

by the appellant." Evitts v. Lucey, 469 U.S. 387, 394 (1985) (emphasis in original) (citing Jones v. Barnes, 463 U.S. 745 (1983)).

In the present case, appellate counsel's decision not to include the juror exclusion claims does not constitute ineffective assistance because, as discussed above, those claims lacked merit. See Mitchell v. Scully, 746 F.2d 951, 955 (2d Cir.1984). Accordingly, the alleged ineffective assistance of appellate counsel with respect to Marshall Nada, Esq. should also be DENIED.

### IV. CONCLUSION

For the reasons stated above, the Court recommends Derek Barnett's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied, and that his petition be dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I recommend that a certificate of appealability not issue. See 28 U.S.C. § 2253(c)(2) (1996).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED:   April 13, 2007
         Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.[7]

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1©.**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY

---

[7] According to the New York State Department of Correctional Services' official website, Petitioner is presently incarcerated in the Otisville Correctional Facility, therefore, the correct Respondent is Paul Kikendall, the Superintendent of the Otisville Correctional Facility. 28 U.S.C. § 2243. In light of Petitioner's *pro se* status, the fact that this will not prejudice Respondent, and in the interests of court efficiency, this Court will deem the Petition amended to change the name of Respondent to Paul Kikendall.

The Clerk of the Court is directed to terminate John Burge as Respondent, add Paul Kikendall, Superintendent of the Otisville Correctional Facility, as the new Respondent, and revise the caption of this case accordingly.

Local Rule 72.1©.

    Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

April 13, 2007

                                                     Victor E. Bianchini
                                                   United States Magistrate Judge